UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HERSCHEL SEDORIS,     Plaintiff,

v.     Civil Action No. 3:20-cv-174-DJH

DIVERSICARE HEALTHCARE
SERVICES, INC. et al.,     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Herschel Sedoris alleges that Defendants Diversicare Healthcare Services, Inc. and Seneca Place, LLC discriminated against him based on his disability, violated the Family Medical Leave Act (FMLA), retaliated against him for pursuing workers' compensation benefits, and discriminated against him based on his age. (Docket No. 1; D.N. 6)[1] Diversicare has filed motions to dismiss the claims in Sedoris's original complaint (D.N. 5) and amended complaint (D.N. 8). Seneca Place has filed a motion to dismiss Counts I and V of Sedoris's amended complaint. (D.N. 20) For the reasons explained below, the Court will grant Diversicare's motion to dismiss the claims in Sedoris's amended complaint and deny Seneca Place's motion.

**I.**

The Court "take[s] the facts only from the complaint, accepting them as true as [it] must do in reviewing a 12(b)(6) motion." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed R. Civ P. 12(b)(6)). Diversicare hired Sedoris, who was born in 1960, in June 2017. (D.N. 6, PageID # 29) Sedoris worked as an administrator at a long-term care facility called Seneca

---

[1] Defendant Majestic Care Home Health, LLC is also named in Sedoris's amended complaint (*see* D.N. 6) and filed a motion to dismiss. (D.N. 23) Sedoris has since voluntarily dismissed his claims against Majestic Care. (D.N. 29) Because Majestic Care is no longer a defendant in this matter (D.N. 30), its motion will be denied as moot.

1

Place (the facility). (*Id.*, PageID # 29) In November 2018, another employee's fiancé assaulted Sedoris, sending Sedoris to the emergency room and subsequently to counseling. (*Id.*, PageID # 30)

In spring 2019, the facility "was undergoing an ownership change as Majestic prepared to take over operations of the facility." (*Id.*) In June 2019, Sedoris was diagnosed with PTSD as a result of his November 2018 assault. (*Id.*) Sedoris's healthcare provider suggested that he take leave under FMLA. (*Id.*) On June 7, 2019, Sedoris requested FMLA leave, and on June 10, 2019, Sedoris updated his claim for workers' compensation benefits. (*Id.*) Sedoris began his leave on July 3, 2019. (*Id.*) During his leave, Diversicare replaced Sedoris "with a significantly younger, non-disabled individual." (*Id.*, PageID # 31)

On July 25, 2019, Majestic formed Seneca Place, LLC to operate the facility. (*Id.*) During his leave, Sedoris remained an employee of Diversicare. (*Id.*) On September 26, 2019, at the conclusion of his leave, Diversicare terminated Sedoris's employment and "did not restore him to an equivalent position or offer him any other opportunity to remain employed despite there being open positions for which he was qualified." (*Id.*) "Sedoris was the only individual who worked at [the facility] under Diversicare [who] was not offered a position after the transition to Seneca Place, LLC." (*Id.*)

## II.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Federal Rule of Civil Procedure Rule 8 and will not withstand a motion to dismiss. *Id.* at 679; *see* Fed. R. Civ. P. 8.

**A.    Diversicare's Motion to Dismiss**

Sedoris concedes that his complaint did not assert age-discrimination claims against Diversicare. (*See* D.N. 13, PageID # 63) Accordingly, the Court considers only Sedoris's remaining claims against Diversicare: disability discrimination under both the Americans with Disabilities Act and Kentucky Civil Rights Act, FMLA interference and retaliation, and retaliation for filing for workers' compensation. (*See* D.N. 6, PageID # 31–34)

**1.    Disability discrimination**

Diversicare argues that Sedoris failed to plead facts to support a claim of disability discrimination. (D.N. 8, PageID # 44) The elements of a disability-discrimination claim, under both the ADA and Kentucky law, are "(1) [the plaintiff] is disabled, (2) [the plaintiff] is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) [the plaintiff] suffered an adverse employment action because of his disability . . . [meaning] [t]he plaintiff's disability must be a 'but for' cause of the adverse employment action." *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014) (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir.2012)) (internal citations omitted).[2]

---

[2] The Sixth Circuit "interpret[s] Kentucky protections for the disabled consonant with the federal Americans with Disabilities Act." *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001) (citing *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998)).

3

Even assuming Sedoris alleged facts that support the first two elements of this claim, his complaint fails on the third. "An adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'" *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008) (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004)). Sedoris asserts that "Diversicare replaced [him] as Administrator with a non-disabled employee and terminated Sedoris'[s] employment at the conclusion of his leave based on his disability." (D.N. 6, PageID # 32) Sedoris's response further clarifies that "Diversicare's termination of Sedoris'[s] employment and their failure to restore [Sedoris] to an equivalent position or offer him the opportunity to transfer to other open positions for which he was qualified . . . are the adverse actions that were taken against Sedoris by Diversicare." (D.N. 13, PageID # 67) But Sedoris has not alleged that Diversicare's temporary replacement of him while he was on leave caused a "materially adverse change in the terms or conditions of . . . [his] employment." *Talley*, 542 F.3d at 1107. Similarly, Sedoris has not alleged that Diversicare's failure to offer him the opportunity to transfer changed his terms or conditions of employment in a materially adverse way. *See id*.

Rather, it was Diversicare's decision to terminate Sedoris that created a "materially adverse change" in his employment. *Id.* But Sedoris's complaint establishes that his disability was not a "but for" cause of this decision. *Demyanovich*, 747 F.3d at 433. When Sedoris returned from FMLA leave, Diversicare could no longer employ him in his previous position because Diversicare no longer employed anyone working at the facility—Majestic did. (*See* D.N. 6, PageID # 30–31 (alleging that the CEO of Majestic "informed Sedoris that *Majestic* would not be[] hiring him as Administrator at [the facility] following the transition" (emphasis added))) Sedoris has therefore not adequately alleged that Diversicare took an adverse employment action against him or that his

4

disability caused his termination, and his discrimination claims against Diversicare must be dismissed. *See Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 161 (D.D.C. 2014) (dismissing plaintiff's ADA claim because "[n]one of the incidents that [plaintiff] alleges actually constitute an adverse employment action").

### 2. FMLA Interference and Retaliation

Diversicare also argues that Sedoris failed to plead facts to support his claims of FMLA interference and retaliation. (D.N. 8, PageID # 44) The elements of an FMLA interference claim (also called an "entitlement claim") are "(1) [the plaintiff] was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) [the plaintiff] was entitled to leave under the FMLA, (4) [the plaintiff] gave the employer notice of [his] intention to take leave, and (5) the employer denied the employee FMLA benefits to which [he] was entitled." *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

Sedoris fails to adequately allege that Diversicare denied him benefits to which he was entitled. Sedoris claims that "Diversicare replaced Sedoris while he was on approved FMLA [leave] and failed to restore him to an equivalent (or any other) position upon the conclusion of his medical leave," instead using "his leave as a negative factor in deciding to terminate his employment." (D.N. 6, PageID # 32) But Diversicare's replacement of Sedoris while he was on leave did not deny Sedoris any FMLA benefits. Rather, FMLA "regulations implicitly recognize that an employer may temporarily reassign the responsibilities of an employee on leave." *Wallace v. Lockheed Martin Corp.*, No. CV-18-00463-PHX-DGC, 2019 WL 2100268, at *6 (D. Ariz. May 14, 2019) (citing 29 C.F.R. § 825.214); *see* 29 C.F.R. § 825.214 ("An employee is entitled

5

to . . . reinstatement even if the employee *has been replaced or his or her position has been restructured* to accommodate the employee's absence." (emphasis added)).

As for Diversicare's failing to restore Sedoris to his position, it is generally true that upon "return from FMLA leave . . . an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position." 29 C.F.R. § 825.214. But "[t]he right to reinstatement [under the FMLA] is . . . not absolute." *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003) (quoting *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001)). "An employer need not reinstate an employee who would have lost his job even if he had not taken FMLA leave." *Id.* at 407–08 (citing 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216); *see* 29 U.S.C. § 2614(a)(3) ("Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."). As discussed above, *see supra* part I.A.1, according to Sedoris's complaint Diversicare could not have employed him at his previous position when he returned from FMLA leave because it had transferred control of the facility to Majestic. (*See* D.N. 6, PageID # 30–31) In other words, Sedoris would have lost his employment with Diversicare at the facility "even if he had not taken FMLA leave." *Pharakhone*, 324 F.3d at 407.

Considering Diversicare's failure to restore Sedoris to an equivalent position, FMLA regulations explain that

> [t]he employee must be reinstated *to the same or a geographically proximate worksite* (*i.e.*, one that does not involve a significant increase in commuting time or distance) . . . . If the employee's original worksite has been closed, the employee is entitled to the same rights as if the employee had not been on leave when the worksite closed. For example, if an employer transfers all employees from a closed worksite to a new worksite in a different

6

> city, the employee on leave is also entitled to transfer under the same conditions as if he or she had continued to be employed.

29 C.F.R. § 825.215(e)(1) (emphasis added). Sedoris has alleged no facts to suggest that an equivalent position existed. He has not claimed that Diversicare operated a geographically proximate facility. Nor has he alleged that Diversicare denied him benefits that other employees received when the facility changed ownership—although Sedoris notes that he "was the only individual who worked at [the facility] under Diversicare that was not offered a position after the transition to Seneca Place, LLC" (D.N. 6, PageID # 31), these hiring decisions was made by Majestic, not Diversicare. (*See id.*, PageID # 30–31)

Sedoris also fails to allege a critical element of his retaliation claim. The elements of an FMLA retaliation claim are "(1) [the plaintiff] availed [himself] of a protected right under the FMLA . . . (2) [the plaintiff] suffered an adverse employment action, and (3) . . . there was a causal connection between the exercise of [the plaintiff's] rights under the FMLA and the adverse employment action." *Edgar*, 443 F.3d at 508 (citing *Skrjanc,* 272 F.3d at 314). Sedoris alleges that Diversicare retaliated against him when it "terminated [his] employment." (D.N. 6, PageID # 33) But as previously discussed, *see supra* part I.A.1, Sedoris's complaint refutes any causal connection between Sedoris's FMLA leave and his termination because when he returned from leave, Diversicare no longer owned the facility and thus could not employ Sedoris in his previous position. Sedoris's FMLA interference and retaliation claims against Diversicare must therefore be dismissed.

### 3. Retaliation for Filing Workers' Compensation

The elements of retaliatory discharge under Kentucky law are (1) the employee "was engaged in a statutorily protected activity"; (2) the employee "was discharged"; and (3) "there was a connection between the 'protected activity' and the discharge," meaning "that the workers'

7

compensation claim was a substantial and motivating factor but for which the employee would not have been discharged." *Bishop v. Manpower, Inc. of Cent. Ky.*, 211 S.W.3d 71, 75 (Ky. Ct. App. 2006) (internal citations omitted) (discussing standard under Ky. Rev. Stat. § 342.197). Sedoris asserts that "Diversicare terminated [his] employment because he filed for workers['] compensation benefits rather than offer him the opportunity to transfer to other open positions for which he was qualified." (D.N. 6, PageID # 34) But Sedoris has not adequately asserted a connection between his filing for benefits and his discharge. "But for" the filing, Diversicare still would have discharged Sedoris from his position because Diversicare could no longer employ him at the facility. *See supra* part I.A.1. Sedoris's retaliation claim against Diversicare therefore must be dismissed.

**B.     Seneca Place's Motion to Dismiss**

Seneca Place seeks to dismiss Counts I and V of Sedoris's complaint (his disability-discrimination and age-discrimination claims) on the ground that Sedoris failed to exhaust his administrative remedies prior to bringing this suit. (*See* D.N. 20-1, PageID # 122) Seneca Place argues that Sedoris "failed to plead facts establishing that he exhausted his administrative remedies." (D.N. 31, PageID # 156) But Sedoris was not required to do so. Failure to exhaust administrative remedies is an affirmative defense to an ADA or ADEA claim. *See Hoover v. Timken Co.*, 30 F. App'x 511, 512 (6th Cir. 2002); *see also Hoogerheide v. I.R.S.*, 637 F.3d 634, 638 (6th Cir. 2011) ("An exhaustion requirement generally will be treated as an affirmative defense." (citing *Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011)).[3] A district court may apply an affirmative defense at the motion-to-dismiss stage only if the plaintiff's "complaint contains

---

[3] Seneca Place pleaded Sedoris's failure to exhaust as an affirmative defense in its answer. (*See* D.N. 24, PageID # 118)

facts which satisfy the elements of the defendant's affirmative defense." *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013). That is not the case here—Sedoris's complaint alleges that he "satisfied his obligation to exhaust his administrative remedies" and received "the appropriate Notice of Suit Rights." (*See* D.N. 6, PageID # 29) Since Sedoris's complaint does not establish the elements of Seneca Place's affirmative defense, the Court cannot dismiss Sedoris's claims against Seneca Place on this ground.[4] *See Estate of Barney*, 714 F.3d at 926.

### III.

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Diversicare's motion to dismiss (D.N. 5) is **DENIED** as moot.

(2) Diversicare's motion to dismiss Sedoris's amended complaint (D.N. 8) is **GRANTED**.

(3) Seneca Place's motion to dismiss (D.N. 20) is **DENIED.**

(4) Majestic's motion to dismiss for lack of jurisdiction (D.N. 23) is **DENIED** as moot.

February 18, 2021

David J. Hale, Judge
United States District Court

---

[4] Seneca Place cites *Hoover v. Timken* in support of its proposition that "[a] failure to exhaust administrative remedies under the ADA or ADEA is properly raised in a 12(b)(6) motion to dismiss." (D.N. 20-1, PageID # 122 (citing *Hoover v. Timken Co.*, 30 F. App'x 512, 512 (6th Cir. 2002))) But in *Hoover*, the defendant did not file a motion to dismiss—rather, "[a]fter the defendant filed an answer listing affirmative defenses, the district court dismissed the action without prejudice for lack of exhaustion of administrative remedies." 30 F. App'x at 512. Given that Sedoris has filed a supplement to his response stating that he recently obtained his EEOC right-to-sue letter as to Seneca Place (*see* D.N. 32), dismissal based on Seneca Place's answer would not be appropriate here.